IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

WAYNE A. JONES, Ed.D.,
        Plaintiff,

v.                                                                 Civil Action No. 3:19-cv-467

VIRGINIA STATE UNIVERSITY, et al.,
        Defendants.

## OPINION

Wayne A. Jones, Ed.D., worked for Virginia State University ("VSU") from 2004 to 2018. In 2012, VSU placed Jones in a full-time tenure track position. In 2016, VSU told Jones that he was eligible to apply for tenure. When Jones applied for tenure, however, VSU denied his application as untimely. Jones has sued VSU and Makola M. Abdullah, Ph.D., the President of VSU, pursuant to 42 U.S.C. § 1983, alleging that they violated Jones' procedural due process rights under the Fifth and Fourteenth Amendments by denying his tenure application without reviewing it on the merits. The defendants have moved to dismiss the amended complaint. Because sovereign immunity bars Jones' claims against VSU and Jones fails to allege a deprivation of a protected property interest, the Court will grant the defendants' motion.

## I. FACTS ALLEGED IN THE COMPLAINT

In 2004, VSU hired Jones as a non-tenure-track Assistant Professor in the Department of Political Science and Public Administration. Jones received a "restricted appointment" contract, which provided that, "[n]otwithstanding any representations to the contrary, this appointment will not be extended or renewed." (Am. Compl. ¶ 9.) Nevertheless, VSU renewed Jones' contract in 2005 and 2006. In 2007, Jones transitioned to a tenure-track Assistant Professor position in his department.

VSU maintains a "Timetable for Promotion/Tenure Review Process" for each academic year. (*Id.* ¶ 16.) A professor must complete four years of full-time teaching in a tenure-track position before applying for tenure and must apply for tenure no later than the end of his fifth year of teaching. (*See* Dk. No. 9-11, at 3.)[1] Thus, the faculty handbook requires VSU to provide Jones with a third year review focused on "the faculty member's progress toward achieving tenure . . . [that] must specifically address the criteria for tenure." (Am. Compl. ¶ 31.) Additionally,

> [the] Office of the Provost reviews the Certification of Tenure Track/Tenure Eligibility Status Form and releases to Academic Deans a list of faculty eligible to apply for tenure. Academic Deans send written notification to each eligible faculty member and provide a copy to the faculty member's chair.

(*Id.* ¶ 16.) The Office of the Provost completes these reviews between April 1 and May 1 of the applicable academic year and notifies eligible faculty members. Once notified, the applicant has until September 1 to submit his tenure application. After an applicant submits his application, his department "confirm[s] the candidate's eligibility and consult[s] with the candidate regarding the completeness of the application." (*Id.* ¶ 24.) "[T]enure[, however,] is not guaranteed as a matter of course to faculty who have completed the probationary period." (Dk. No. 9-11, at 3.)

---

[1] When evaluating a Rule 12(b)(6) motion, courts typically focus only on the complaint, documents attached to the complaint, and documents explicitly incorporated into the complaint by reference. *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016). In appropriate cases, however, courts may also (1) take judicial notice of public records, such as state court records, and (2) consider documents submitted by the movant if the documents are integral to the complaint and indisputably authentic. *Id.*; *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396 (4th Cir. 2006) (per curiam). The defendants attach numerous exhibits to their motion to dismiss, including the VSU faculty handbook, Jones' appointment paperwork, and letters denying his applications for tenure in 2010 and 2017. Jones does not dispute the authenticity of these documents, but he argues that they are not integral to the complaint. Jones, however, has relied on provisions of VSU's tenure review process that appear in the faculty handbook to support his allegations regarding the process due. Thus, the Court finds the tenure review process document integral. The Court does not consider the remaining attachments because the amended complaint fails to state a claim in any event.

In 2010, Jones applied for tenure because he thought that his previous higher-education work satisfied the years of service requirement. The Promotion & Tenue Committee ("P&T Committee") denied his application as premature because Jones' previous work did not count toward the requirement. Also in 2010, at the request of Provost Weldon Hill, Ph.D., Jones accepted a position as the Coordinator of Individualized Studies in the Office of Continuing Education and Individualized Services. Jones primarily oversaw VSU's Bachelor of Individualized Studies program. Jones remained in this role from 2010 until 2012. Hill then placed Jones in a full-time tenure track position for the 2012-2013 academic year "with '3 years counted toward Promotion/Tenure.'" (*Id.* ¶ 13.)

Jones remained in a tenure track position from 2013 to 2016. VSU never told Jones that he was eligible to apply for tenure during that time and never performed a third year review with him. In Spring, 2016, Dr. Andrew Kanu, Dean of the College of Humanities and Social Sciences, left a message for Jones telling him to apply for promotion and tenure after receiving the list of faculty eligible to apply for tenure. Kanu's message was the first time VSU told Jones he was eligible for tenure. Jones asserts that VSU never included him as eligible for tenure on previous lists.

Jones then met with Gary Baker, chair of Jones' department, about Kanu's message. Baker told Jones to apply for tenure. Jones submitted his application for tenure by the September 1, 2016 deadline. After receiving his application, Baker confirmed Jones' eligibility for tenure. On December 2, 2016, Baker and the department committee recommended Jones for tenure. On January 4, 2017, Kanu recommended Jones for tenure. On March 7, 2017, Jones received a letter from the Provost denying his application as untimely. The letter indicated that Jones should have

applied in either the 2013-2014 or 2014-2015 academic years without mentioning that VSU had not notified Jones that he was eligible for tenure until 2016.

Jones appealed the Provost's decision, which was denied on May 22, 2017. On June 22, 2017, President Abdullah affirmed that decision. Neither letter denying his appeal discussed whether VSU had properly notified Jones that he was eligible to apply for tenure in previous years. In October, 2017, Jones sent Abdullah a final appeal letter regarding VSU's decision to deny Jones' tenure application. Abdullah has not responded to this letter. Because VSU denied Jones tenure, Jones received a terminal contract for the 2017-2018 academic year, which ended his employment effective September 1, 2018.

Between 2009 and 2016, VSU awarded tenure to seventy-four professors. Jones alleges that he compares more favorably than at least ten of those professors. He does not know of any VSU professors denied tenure "(i) who have been recommended for tenure by both their Department and their School[,] and [(ii)] whose applications have been considered on the merits who have not been granted tenure at [VSU]." (*Id.* ¶ 36.)

The defendants have moved to dismiss Jones' amended complaint for lack of subject matter jurisdiction and for failure to state a claim.

## II. DISCUSSION

### *A. Sovereign Immunity*[2]

The Eleventh Amendment guarantees "that nonconsenting States may not be sued by private individuals in federal court." *Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 363 (2001). This immunity extends to state agents and state instrumentalities. *See Cash v. Granville Cty. Bd. of Educ.*, 242 F.3d 219, 222 (4th Cir. 2001). VSU qualifies as a state agency and enjoys the privileges of immunity. *See* Va. Code Ann. § 23.1-2700 *et seq*. (creating VSU through Virginia statute). Further, the Court treats Jones' claims against Abdullah in his official capacity "as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Thus, Abdullah also enjoys the privileges of immunity as to those claims.

A claim against a state agency in federal court may overcome the Eleventh Amendment immunity bar in three ways: (1) Congress abrogating state immunity; (2) a plaintiff seeking only prospective or injunctive relief against a state agent; or (3) a state expressly consenting to suit or waiving its immunity. *See Garrett*, 531 U.S. at 363; *Edelman v. Jordan*, 415 U.S. 651, 673 (1974); *Ex parte Young*, 209 U.S. 123, 159-60 (1908). The first and third exceptions do not apply here. The Supreme Court has held that Congress did not abrogate states' immunity through § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65 (1989). Nor has Virginia consented to the suit or

---

[2] A motion under Rule 12(b)(1) tests the Court's subject matter jurisdiction. The plaintiff bears the burden of proving proper subject matter jurisdiction as the party asserting jurisdiction. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). Although the Eleventh Amendment simply deprives federal courts of jurisdiction over claims against states, it is commonly referred to not as a jurisdictional rule but as a recognition of states' sovereign immunity in federal court. Sovereign immunity is a jurisdictional issue. *See Research Triangle Inst. v. Bd. of Governors of the Fed. Reserve Sys.*, 132 F.3d 985, 987, 990 (4th Cir. 1997); *see also Wicomico Nursing Home v. Padilla*, 910 F.3d 739, 746-48 (4th Cir. 2018) (affirming a district court's order dismissing a case based on sovereign immunity under Rule 12(b)(1)).

waived its immunity in this action.[3] *Id.* at 66-69. Moreover, the second exception—the limited exception for injunctive or prospective relief set forth in *Ex parte Young*, 209 U.S. 123—applies to state officers in their official capacities, not suits against the state or state agency themselves. *See Biggs v. N.C. Dep't of Public Safety*, No. 18-2437, 2020 WL 1140936, at *4 (4th Cir. Mar. 10, 2020) (published opinion). Thus, the Court will dismiss this case as to VSU[4] and will only consider whether Jones seeks prospective relief against Abdullah.[5]

The *Ex parte Young* doctrine provides a limited exception to Eleventh Amendment immunity that focuses on ensuring that state officials' future conduct complies with federal law. *See Quern v. Jordan*, 440 U.S. 332, 337 (1979); *Lytle v. Griffith*, 240 F.3d 404, 408–09 (4th Cir. 2001). Under this exception, a plaintiff can sue state officers acting in their official capacities "when '(1) the violation for which relief is sought is an ongoing one, and (2) the relief sought is only prospective.'" *Wicomico Nursing Home v. Padilla*, 910 F.3d 739, 746 (4th Cir. 2018) (quoting *Republic of Paraguay v. Allen*, 134 F.3d 622, 627 (4th Cir. 1998)). "It does not apply when the alleged violation of federal law occurred entirely in the past." *DeBauche v. Trani*, 191 F.3d 499, 505 (4th Cir. 1999). Although "[m]oney damages are probably the purest and most

---

[3] For example, VSU has not removed this case to federal court. *See Sansotta v. Town of Nags Head*, 724 F.3d 533, 546 (4th Cir. 2013).

[4] Because the Court does not reach the merits of Jones' claims against VSU, it will dismiss those claims without prejudice. *See Terry v. U.S. Postal Serv.*, 418 F. App'x 266 (2011) (per curiam) (affirming a dismissal without prejudice based on sovereign immunity).

[5] The parties do not dispute that Jones can only seek monetary damages against Abdullah in his individual capacity. Thus, the defendants argue that sovereign immunity bars Jones from receiving both declaratory and injunctive relief. Jones, however, has sued VSU "solely to obtain injunctive relief." (Am. Compl. ¶ 6.) The Court, therefore, understands Jones to sue Abdullah in his official capacity only for "prospective injunctive relief," not for declaratory relief. (*Id.* at 11.) Accordingly, the Court focuses on whether his request for an injunction, not his request for declaratory relief, meets the *Ex parte Young* exception. Regardless, for the reasons set forth below, Jones fails to state a claim for relief as to Abdullah in either his individual or official capacity.

recognizable form of retrospective relief, [they are] surely not the only form, and the fact that [money damages are] not sought whereas an injunctive or declarative [remedy] is, does not automatically establish that the *Ex parte Young* exception allows the action to proceed." *Allen*, 134 F.3d at 628.

Here, Jones seeks prospective injunctive relief. Specifically, he asks that "Dr. Abdullah, acting for VSU, overrule the tenure eligibility decision as to Dr. Jones and . . . , instead, require his application to be substantively reviewed by the P&T Committee." (Am. Compl. at 11.) Jones essentially seeks reinstatement because he further contends that he will return to VSU as a tenured professor once the P&T committee substantively reviews his application.

"[C]laims for reinstatement to previous employment meet the *Ex Parte Young* exception." *Biggs*, 2020 WL 1140936, at *5. Jones has also alleged that Abdullah has not responded to his final appeal letter, suggesting that the appeals process is not yet complete. Moreover, "Abdullah has . . . the power and authority to order that . . . Jones' application for tenure . . . be considered on the merits by the [P&T] Committee." (Am. Compl. ¶ 6); *see Allen v. Coll. of William & Mary*, 245 F. Supp. 2d 777, 791 (E.D. Va. 2003) ("[The] [p]laintiff is entitled pursue a § 1983 claim against [the defendant] in her official capacity for injunctive relief in the form of reinstatement provided that [the defendant] has the authority to provide for such relief."). Thus, sovereign immunity does not bar Jones' claims against Abdullah in his official capacity.

### B. Due Process[6]

When considering a due process claim under § 1983, the Court must first decide whether the defendants deprived the plaintiff of a liberty or property interest protected by the Fourteenth Amendment "because the requirements of procedural due process only apply when such protected interests are implicated."[7] *Davis v. Rao*, 982 F. Supp. 2d 683, 688 (E.D. Va. 2013), *aff'd*, 583 F. App'x 113 (4th Cir. 2014) (per curiam). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). Here, Jones argues that he had protected property interests in (1) a fair tenure review process, and (2) a common-law interest in tenure itself.

Jones does not have a protected property interest in the tenure review process. Although a tenured employee has a protected property interest in his continued employment,[8] "[t]enure review

---

[6] A Rule 12(b)(6) motion gauges the sufficiency of a complaint without resolving any factual discrepancies or testing the merits of the claims. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering the motion, a court must accept all allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999)). The principle that a court must accept all allegations as true, however, does not apply to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a Rule 12(b)(6) motion to dismiss, a complaint must state facts that, when accepted as true, state a claim to relief that is plausible on its face. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

[7] Jones' claims fail to the extent he alleges due process violations under the Fifth Amendment. The Fifth Amendment Due Process Clause only applies to federal actors. *See Winfield v. Bass*, 106 F.3d 525, 530 n.2 (4th Cir. 1997). Jones has brought claims against state actors, not federal actors.

[8] *See id.* at 576. Similarly, college professors and staff members who have a contract with a public university have a protected property interest in their employment during the terms of their contracts. *See id.* at 576-77.

procedures, without more, do not give rise to a protected property interest." *Davis*, 583 F. App'x at 114; *cf. Siu v. Johnson*, 748 F.3d 238, 244 n.11 (4th Cir. 1984). Because those procedures do not constitute a protected property interest, VSU's alleged failure to follow its tenure review process does not give rise to a cognizable due process claim. *See Davis*, 583 F. App'x at 114.

Similarly, Jones does not have a protected property interest in tenure itself. Generally, an untenured professor has no protected property interest in continued employment. *See Amr v. Va. State Univ.*, No. 3:07cv628, 2009 WL 112829, at *8 n.15 (E.D. Va. Jan. 14, 2009), *aff'd*, 331 F. App'x 194 (4th Cir. 2009) (per curiam). Even absent tenure or a written contract, however, "[a] teacher . . . who has held his position for a number of years, might be able to show from the circumstances of this service—and from other relevant facts—that he has a legitimate claim of entitlement to job tenure." *Perry v. Sindermann*, 408 U.S. 593, 602 (1972). "[T]here may be an unwritten 'common law' in a particular university that certain employees shall have the equivalent of tenure." *Id.*; *cf. Siu*, 748 F.2d at 243-44. For example, in *Perry*, the Supreme Court held that an "unusual provision" that guaranteed tenure "as long as his teaching services are satisfactory and . . . he displays a cooperative attitude toward his co-workers and his superiors," coupled with a state law that guaranteed "some form of job tenure" after seven years of teaching, could "justify [a] legitimate claim of entitlement to continued employment." 408 U.S. at 599-603.

Jones does not plead facts showing that a common law right to tenure exists. He alleges that, out of seventy-four professors awarded tenure between 2009 and 2016, he compares more favorably than ten of them. He also asserts that every applicant received tenure when he or she earned a recommendation from his or her department and school and when the P&T Committee considered the application on the merits. Although these previous tenure decisions may have created a "subjective 'expectancy' [not] protected by procedural due process," Jones has not

9

"alleged the existence of rules and understandings, promulgated[,] and fostered by state officials" that would give rise to a protected right to tenure. *Id.* at 602. Indeed, the faculty handbook provides that "tenure is not guaranteed as a matter of course to faculty who have completed the probationary period." (Dk. No. 9-11, at 3.) Thus, Jones has not sufficiently alleged that VSU deprived him of a property interest in violation of his due process rights.

### III. **CONCLUSION**

Because sovereign immunity bars Jones' claim against VSU and Jones does not allege a deprivation of a protected property interest, the Court will dismiss this case.

The Court will issue an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: 6 April 2020
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge